IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| DOMINIQUE GALLOWAY, | ) | |
| Movant, | ) ) ) | Cv. No. 2:20-cv-02147-SHL-atc |
| v. | ) ) | Cr. No. 2:18-cr-20263-SHL |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255, DENYING A CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court are the Motion for Reinstatement of Direct Appeal Right Pursuant to Title 28 U.S.C. Section 2255 ("§ 2255 Motion") filed by Movant, Dominique Galloway (ECF No. 1); the Amended Response of the United States to Motion Pursuant to 28 U.S.C. § 2255 ("Amended Answer") (ECF No. 10); and Defendant's Sworn Statement-Reply to United States' Response to 28 U.S.C. § 2255 ("Reply") (ECF No. 12). For the reasons stated below, the Court **DENIES** the § 2255 Motion.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

   A.   **Criminal Case Number 2:18-cr-20263-SHL**

On August 23, 2018, a federal grand jury in the Western District of Tennessee returned a two-count indictment against Galloway. (Criminal ("Cr.") ECF No. 2.) Count 1 charged that, on or about April 9, 2018, Galloway, aided and abetted by others, robbed a Huey's restaurant in Memphis, Tennessee, in violation of 18 U.S.C. §§ 1951 and 2. Count 2 charged that Galloway,

aided and abetted by others, used, carried, and brandished a firearm during and in relation to the robbery charged in Count 1, in violation of 18 U.S.C. §§ 924(c) and 2.

Pursuant to a written plea agreement, Galloway appeared before the undersigned November 20, 2018, to plead guilty to the indictment. (Cr. ECF Nos. 21, 22, 40.) The plea agreement contained the following appeal waiver provision:

> 5. DOMINIQUE GALLOWAY understands that 18 U.S.C. § 3742 gives him the right to appeal the sentence imposed by the Court. Acknowledging this, the defendant knowingly and voluntarily waives his right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as it is within the applicable guideline range, or lower, whatever the guideline range might be. . . . The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct and ineffective assistance of counsel.

(Cr. ECF No. 22 at PageID 35.) Galloway testified that he understood the appeal waiver. (Cr. ECF No. 40 at PageID 153.) Galloway also testified that the plea agreement included all understandings that he had with the Government. (*Id.* at PageID 150.) Nobody made any promises or issued any threats to persuade Galloway to plead guilty. (*Id.* at PageID 150–51.) The Court advised Galloway that it was not bound by the Government's sentencing recommendation and that it would not make a decision about the sentence to be imposed until the sentencing hearing. (*Id.* at PageID 151, 153.) The Court found that Galloway had entered a knowing and voluntary plea with the assistance of counsel. (*Id.* at PageID 157.)

At a hearing on February 22, 2019, the Court sentenced Galloway to a term of imprisonment of one hundred twenty-one (121) months, to be followed by a three-year period of supervised release. (Cr. ECF Nos. 29, 41.)[1] At the conclusion of the hearing, the Court addressed Galloway about his appeal rights, stating as follows:

---

[1] The Court sentenced Galloway to consecutive terms of thirty-seven months on Count 1 and eighty-four months on Count 2. (Cr. ECF No. 41 at PageID 193–94.) Galloway had a total

2

>Mr. Galloway, defendants have a right to appeal a sentence, but that right is often given up as part of the plea deal.  Here you gave up your right to appeal unless I sentenced you to something more than the guidelines or if you believe there's been prosecutorial misconduct or ineffective assistance of counsel.
>
>The waiver is usually enforced by the Court of Appeals.  If you think something was improper with the waiver, you can argue that to the Court of Appeals.
>
>If you wish to appeal, the notice has to be filed within 14 days of when we enter the judgment here, or 14 days if the government were to appeal.  If you wish the clerk to prepare and file your notice of appeal, you can make that request.
>
>If you wish to appeal and can't afford the cost of an appeal and the cost of a lawyer, you can seek to appeal in forma pauperis, which means without paying and appointing counsel.  And that packet has your appeal rights in it.

(Cr. ECF No. 41 at PageID 197–98.)  Judgment was entered on February 25, 2019.  (Cr. ECF No. 30 (sealed).)  Galloway did not file a direct appeal.

### B.    Galloway's § 2255 Motion, Civil Case Number 2:20-cv-02147-SHL-atc

#### 1.    Procedural Background

On February 14, 2020, Galloway filed his *pro se* § 2255 Motion and accompanying factual affidavit, which complain that defense counsel disregarded a request to file a notice of appeal.  (ECF No. 1.)

The Court directed the Government to respond on March 5, 2020.  (ECF No. 4.)[2]  On May 1, 2020, the Government filed the Response of the United States to Motion Pursuant to 28 U.S.C. § 2255 ("Answer").  (ECF No. 8.)  Because the Answer did not apply the correct legal

---

offense level of 17 on Count 1 after the reduction for acceptance of responsibility.  Given his criminal history category of IV, the guideline sentencing range on Count 1 was thirty-seven to forty-six months, to run consecutively to a mandatory minimum sentence of eighty-four months on Count 2.  The Court rejected the defense argument that Galloway was a minimal participant in the Hobbs Act robbery, which would have reduced his total offense level to 13.  (Cr. ECF No. 27; Cr. ECF No. 41 at PageID 165–76.)  Had the Court accepted that argument, the guideline sentencing range on Count 1 would have been twenty-four to thirty months.

[2] Another copy of the order was docketed on March 6, 2020.  (ECF No. 6.)

3

standard, the Court issued an order on May 4, 2020, directing the Government to file an amended answer. (ECF No. 9.) On May 27, 2020, the Government filed its amended answer, which was accompanied by two Sworn Statements of Attorney Terrell Tooten, Galloway's trial counsel, and various documents. (ECF Nos. 10, 10-1, 10-2.) On June 22, 2020, Galloway filed his Reply. (ECF No. 12.)[3]

In an order issued on November 30, 2022, the Court advised that an evidentiary hearing would be required and referred the matter to the magistrate judge for appointment of counsel. (ECF No. 16.) On December 21, 2022, Matthew Charles Gulotta was appointed to represent Galloway. (ECF No. 19.) An evidentiary hearing was held on June 15, 2023, at which Galloway and Tooten testified. (ECF No. 30.)

## 2. Factual Background

In the affidavit accompanying his § 2255 Motion, Galloway "sw[ore] under penalty of perjury that I requested my attorney to file an appeal and he ignored my request, and stated that 'I don't have the right to appeal because I waived my right to appeal.[']" (ECF No. 1 at PageID 3.) At the evidentiary hearing, Galloway testified that, in a conversation in the lock-up right after sentencing, he asked Tooten to appeal immediately because he had expected an eight-year sentence. According to Galloway, Tooten told him that he could not appeal and that the sentence he received was as good as it gets. Galloway testified that he took Tooten's word for it that he could not appeal. Although he acknowledged that he received the appeal packet at sentencing, Galloway did not recall whether he took the packet with him when he left the courtroom.

---

[3] Although Galloway did not sign his reply as required by Federal Rule of Civil Procedure 11(a), the Court will nevertheless consider it.

On cross-examination, the Government read from a transcript from the February 22, 2019 sentencing hearing as to what the Court had told Galloway about an appeal, and Galloway replied that he did not understand what the Court had told him. Galloway testified, without elaboration, that he did not believe that he could get more time on his state case than he received on his federal case.

Galloway also testified that, after sentencing, he wrote to Tooten asking for his file.[4] He stated that he did not mention an appeal in that letter because he did not think he could appeal. Rather, he wrote the letter because an inmate legal adviser had asked to see his paperwork to figure out what he could file to get back into court. When Galloway was housed in Alabama, he learned that he could file a § 2255 motion and another inmate prepared the motion.

In his first sworn statement, Tooten stated that "at no point in time [did Galloway] ever ask[] me to appeal his federal guilty plea, and [he] was provided with the information needed to file his own appeal if he chose to do so." (ECF No. 10-1 at PageID 30.) Tooten reiterated that position in his second sworn statement, in which he referenced Galloway's July 8, 2019 letter asking for a copy of his file. (ECF No. 10-2.) There, Tooten stated that, "[p]rior to his 2255 petition, I had no reason to believe that [Galloway] wanted an appeal done, or that he expected me to do an appeal on his behalf." (*Id.* at PageID 50.)

As for the sentence itself, Tooten averred that Galloway was aware of his sentence exposure prior to the sentencing hearing. (ECF No. 10-1 at PageID 30.) Tooten stated that the plea agreement was beneficial to Galloway because of his potential exposure on state charges:

> [Galloway], at the time of sentencing, was still facing charges in state court, based on the facts and circumstances of the federal court indictment.

---

[4] A copy of the letter is found at ECF No. 10-2 at PageID 51.

> In state court, [Galloway] was indicted under Indictment 18 04746, which had a case number C1806740. In relevant part, my 1-8-19 letter [to Galloway] stated:
>
>> In state court, you are charged with Aggravated Robbery, and 3 aggravated assaults. Because of your criminal history, you are Range II. So on the Robbery, you are looking at 12-20 years at 85%, and on the Aggravated Assaults, you are looking at 6-10 years at 35%. The judge could run them concurrent or consecutive.
>
> Therefore, at the time of sentencing in federal court, [Galloway] was aware that he was facing more time in state court, then [sic] the maximum time that he could receive in federal court. However, after [Galloway] pled guilty in federal court, I was able to get the state court to agree to dismiss their indictment against [him]. This was done on 3-1-19. Even though the dismissal was entered, it would not become final until 30 days after that. [Galloway] never attempted to have this reversed or undone. If the federal court case was appealed, the state court dismissal would have been undone.
>
> On 8-2-19, over 5 months later, I received a text message from [Galloway's] mother, informing me that he wanted to talk to me about going back to court on his federal case. This was the first time that I was informed that [Galloway] wanted to go back to court on his case in any capacity. I was also asked how much I would charge to do a 2255. My understanding, after speaking with his mother, was that [Galloway] believed that the law had changed in his favor based on the Davis case, in relation to his convictions. I was not informed about any allegations that he wanted an appeal done that I failed to do.

(*Id.* at PageID 30–31.)

Attached to Tooten's statement is the state court indictment for aggravated robbery and four counts of aggravated assault. (*Id.* at PageID 32–37.) Tooten also attached copies of the relevant Tennessee statutes. Aggravated robbery is a Class B felony (*id.* at PageID 44), and aggravated assault committed by the use or display of a weapon is a Class C felony (*id.* at PageID 44–45). As a Range II offender, Galloway faced a sentencing range of twelve (12) to twenty (20) years on the aggravated robbery and from six (6) to ten (10) years on each aggravated assault. (*Id.* at PageID 46.) That case was resolved by *nolle prosequi* on March 1, 2019, six days after entry of the federal judgment. (*Id.* at PageID 48.)

At the evidentiary hearing, Tooten testified that he remembered Galloway's sentencing well. He denied telling Galloway that he would be sentenced to eight years. He had discussed with Galloway that he planned to seek a reduction in the guideline range based on Galloway's allegedly minimal role in the offense. In their discussions about strategy, Galloway never expressed a desire to appeal.

Tooten testified that he spoke to Galloway immediately after the sentencing to wish him luck. He told Galloway that he could reduce the time he would have to serve with good behavior. Galloway never told Tooten that the sentence was higher than he expected. Galloway did not express any concerns about his sentence, according to Tooten.

Tooten testified that, despite the appeal waiver provision of the plea agreement, he was aware that Galloway retained his right to appeal under certain circumstances, such as, for example, if he believed that his guilty plea was involuntary. Tooten also was aware that he had an obligation to file a notice of appeal if Galloway asked him to. Tooten testified that, if Galloway had asked him to file a notice of appeal, he would have complied. Tooten did not ask Galloway whether he wanted to appeal.

Tooten also represented Galloway in the related state case. Tooten advised Galloway that, if he were convicted in the state case, he would receive more time than he had in the federal case. Initially, the negotiations with state prosecutors were not going well because the trial judge had made comments in open court that were not favorable to Galloway. After Galloway was sentenced in the federal case, Tooten appeared in state court seeking dismissal of the charges. According to Tooten, the state prosecutors were not happy with the sentence that Galloway had received on the federal case but agreed to dismiss the state charges.

Tooten testified that, after the sentencing, Galloway sent him a letter and Tooten had a telephone conversation with Galloway's mother about a § 2255 motion. The subject of an appeal did not arise in either of those communications. Tooten told Galloway's mother that he could not represent him on the § 2255 because it would address his representation in the criminal case.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "The evidentiary hearing is mandatory unless the record conclusively shows that the petitioner is entitled to no relief." *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (internal quotation marks omitted).

Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollections of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him [or her] summarily to dismiss a § 2255 motion . . . ."). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### III.   ANALYSIS

The Sixth Amendment right to the assistance of counsel extends to direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). The failure of defense counsel to file a notice of appeal despite being instructed to do so by his client constitutes *per se* ineffective assistance without regard to the legal merit of any issues that might be raised on direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Rodriquez v. United States*, 395 U.S. 327, 340 (1969). However, "a defendant's actual 'request' is still a critical element in the Sixth Amendment analysis." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Regalado v. United States*, 334 F.3d 520, 525–26 & n.3 (6th Cir. 2003) (an expression of a defendant's "desires" or "wishes" is not equivalent to an express instruction). This rule applies even where, as here, the defendant has entered into a plea agreement that waives his right to take a direct appeal. *Garza v. Idaho*, 139 S. Ct. 738 (2019); *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012).

Here, Galloway testified that he asked Tooten to file a notice of appeal but Tooten did not do so. Galloway asserts that the Court should accept his version of events, as his was just one of

the many cases Tooten handled, whereas the case was a major event in Galloway's life. Galloway essentially argues that his own memory is better than Tooten's.

However, Tooten testified that he had a clear memory of Galloway's sentencing, and that he believed that the resolution of the state and federal cases was favorable to Galloway. He nevertheless acknowledged that, had Galloway requested an appeal be filed, he was bound to do so and would have filed it on his behalf. According to Tooten, Galloway made no such request.

The Court finds Tooten's testimony to be more credible than Galloway's. Had Galloway made the request, there is no reason to believe that Tooten would not have performed the ministerial act of filing a notice of appeal. Moreover, the weight of the evidence supports the conclusion that the request to appeal was <u>not</u> made, given the adverse impact of that act on the pending state case.[5]

Even if the Court were to credit Galloway's version of events and conclude that Tooten's performance was deficient, Galloway suffered no prejudice. Galloway's contention that Tooten "did not provide [him] with information needed to file his own appeal" (ECF No. 12 at PageID 61), is undermined by the record and ignores the fact that, at the sentencing hearing, the Court gave Galloway the appeal packet and explained to Galloway that, notwithstanding the waiver, he was entitled to file a notice of appeal. Although Galloway claimed that he did not understand the Court's explanation, Galloway did not express any confusion about his rights at the sentencing hearing. Thus, when he left the courtroom, Galloway had all the tools he needed to initiate an

---

[5] Galloway asserts that Tooten did not produce any documents to support his assertion that, had Galloway filed an appeal in his federal case, the dismissal of his state charges would have been undone. (ECF No. 12 at PageID 61–62.) However, Tooten testified that, because the federal and state charges were based on the same facts and circumstances, the state prosecutors decided to dismiss the charges against Tooten in state court only after he entered a plea in the federal case. The lack of documentary support does not undermine Tooten's assertion.

appeal with or without Tooten's assistance. That fact distinguishes this case from the typical *per se* situation in which the defendant necessarily relies on his attorney to initiate an appeal.[6]

Because the claim presented is without merit, the Court **DENIES** the § 2255 Motion. The § 2255 Motion is **DISMISSED WITH PREJUDICE**. Judgment shall be entered for the United States.

IV.     **APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). No § 2255 movant may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that

---

[6] Galloway does not assert that Tooten failed to consult with him about an appeal, but, even if he had, that claim would not offer him relief. Under *Flores-Ortega*, counsel "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. Neither of those circumstances apply here.

> jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . .

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect."  *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) .  "To put it simply, a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable*."  *Id.*

In this case, there can be no question that the issue raised in Movant's § 2255 Motion is meritless; therefore the Court **DENIES** a COA.

The Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  *Id.* at 952.  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)–(5).

In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Federal Rule

12

of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.

Leave to appeal *in forma pauperis* is **DENIED**.[7]

   **IT IS SO ORDERED**, this 27th day of September, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of entry of this Order. *See* Fed. R. App. P. 24(a)(5).